Good morning. May it please the Court? Are we ready? Yes, we're ready. Okay. State your name. My name is Anders Johnson. I represent the petitioner. Thank you. Please proceed. This is a case involving a person who is in opposition of the coercive family planning policy in China, the one-child policy, as her political opinion, the things that she did to resist, and the treatment that she received in China. The petitioner is married with two children. After the birth of her first child, she was forced to have an IUD inserted, and by forced, meaning she was dragged to the hospital against her will and had the due to the failure of the IUD, and had a second child. She had the assistance of her mother and of her neighbor in order to accomplish it. I think we're pretty familiar with the facts here. I wanted to ask a couple of questions here regarding the adverse credibility finding by the immigration judge. It seems like that's your big challenge here in this appeal. I'm curious, why did your client fail to produce any type of corroborating evidence after the IJ requested it? I would argue, for the most part, something on availability. For example, the household registration, which was being kept by the police station. It was simply impossible for her to obtain that type of evidence. Well, could she have contacted her husband and her children, or submit an affidavit from her husband or her children? It seems like she lived in the same place for over 20 years, and that, you know, there might have been some evidence to corroborate that. I was just curious why that wasn't presented. With regard to the household registration, arguably, she could have gotten a letter from her husband. The question is whether that was as reliable as her own testimony with regard to where the household registration is kept. Getting a statement from the police station would have been arguably impossible. And I think even with regard to what's in the household registration would have probably required more than simply a statement from her husband. And again, that evidence would have been impossible to obtain from the petitioner. So, you know, it's a situation where do you get the evidence other than a statement from your own husband? And I would argue that it just simply isn't available. What I think is somewhat, you know, the challenge here is that it seems like she was given an opportunity to address each of the inconsistencies that the BIA and the IJ relied on. Was she not? She was. Okay, so if she was, then... Well, I made the argument, Your Honor, that simply she attempted to explain it, but I think in the end, as she testified, she simply didn't know why, for example, the household registration has different information or has wrong information. She simply doesn't know. I mean, give her credit for trying to give an answer, but that unfortunately is probably one of the reasons we're here today. She just simply, I think, attempted to make an explanation. She just simply doesn't have one. You say she attempted to make an explanation. Do you think language played a role in the IJ's credibility finding? I don't think the transcript points that out. I was not at the trial to discern that myself, so I don't know. You know, it's always a factor in that. I should note that the attorney who did the hearing spoke Chinese, so she would have had the opportunity to make any objections if there was a problem. In other words, I don't know. What's your best argument here today on behalf of your client? My argument is that the inconsistencies are regarding documents, some that were submitted, like the fine payment or anything like that. And to be questioned as to why it says something that is not true or has some slight errors, in the end, despite her attempt to explain it, she in the end admits she doesn't know. And then the question is, is it reasonable to expect her to have some evidence that may not exist to prove that it's not an inconsistency? Do you want to reserve the rest of your time? Yes. Good morning again, Your Honors. John Williams on behalf of the government. Here again, we have a petitioner who the immigration judge found lacked credibility and determined that she did not establish her eligibility for asylum and other related relief. The board affirmed the immigration judge's determination that the petitioner lacked credibility. The agency here cited specific and cogent reasons, including multiple inconsistencies. And under this court's law, one inconsistency is enough to support the agency's decision. Here we have, at minimum, six inconsistencies that the agency lacks employment status, the children's school attendance, the location of the household register, as well as the petitioner's home address. Let's say we, I understand your arguments on that front, but let's say we disagree with the BIA's asylum analysis, where they said even assuming she's credible, they think she would still not be eligible or should be getting any sort of asylum relief. We have to send it back to the BIA then, right? Because it looks like, from my read of the BIA disposition, it only affirmed the credibility of Wang's testimony. Actually, Your Honor, the board affirmed the alternative decision that the immigration judge made as well. Where is that? Because I didn't read it that way. It is on the, I believe the third page of the board's decision at the end of the first paragraph. It's one sentence. Do you have it? Would you say the last page? It's on the last page, page, administrative record page six. It says at the end of the first paragraph, moreover, for the reasons provided by the immigration judge, we affirm the immigration judge's alternative finding that even assuming credibility, the respondent did not establish eligibility for asylum. That's assuming credibility. That is. And I can speak to the lack of other resistance. I know, but they didn't make a separate finding that if we don't assume her credibility, she's still not eligible for asylum. Well, in this instance, they expressed adoption of the immigration judge's decision. So the court, this court can then look to the immigration judge's decision regarding the other resistance issue. It seems like we have to look and see what the BIA, or at least tell me if I'm wrong, what they relied on. If they only relied on one part of the IJ's decision and not specifically adopt the other, then it seems like we have to send it back. In fact, the IJ did make a reference to, I'm going to assume her credibility, she doesn't get asylum, and even assuming, and even without assuming her credibility, she gets, he did it both ways. And so the BIA didn't, and it seems like it complicates the appeal a bit if we disagree, because I think there are some issues regarding if we assume her credibility. I don't know that I necessarily agree, and I'm just speaking for myself, with the immigration judge's determination that she, you know, didn't resist. And what, I guess, what's your response to that? My response would be that, with regard to the other resistance to family planning policy, while the petitioner's actions may have interfered with the first instance where she was placed with an intrauterine device, an IUD, that IUD fell out on its own. And the immigration judge lists these things within the decision. With regard to the second pregnancy, the petitioner was discreet about the second pregnancy. Well, but it was a forced IUD, correct? She did not, the petitioner did not express any physical or vocal resistance to having the IUD placed. She was terminated from her job? Yes. There are inconsistencies. She testified that she was terminated from her job. Are you saying she wasn't terminated from her job? I'm saying that she did testify to that. What's your position on that? Was she or was she not terminated from her job? Well, the, she may have well been. The question is whether or not, that she's faced economic deprivation. And in this instance, she testified that she was able to pay the fine that her husband, who she also stated was terminated from his job, he was able to obtain a job making many times much more money and they ultimately paid the fine and she didn't express any resistance to that. But the financial penalties were rather steep, were they not? No, they were not. She expressed that she paid $20,000 or $20,000 in their denomination. And if you juxtapose that with the fact that she paid $30,000 to come to the United States and the fact that her husband ultimately obtained a job, that in and of itself is questionable. That's listed under our inconsistency. But if you look at the fact that she was able to have a second child and she remained in the country with the IUD in place for another 15 years and from 2000 forward to 2009, she did not express any disruption, any harm with regard to the family planning policy. Well, here we have her knowingly violating the policy. We have her landlord and her mother being fined for helping conceal the pregnancy. That seems somewhat distinguishable for me than the cases that are at least there's one case out there that says having the second child alone doesn't establish resistance. Exactly, Your Honor. And we've listed a couple of cases in our brief. In addition, that was those instances that you cite were in 1994 when she initially had the second child. So with regard to the petitioner, she remained in China for 15 years following that birth, did not attempt to have the IUD removed. She came to the United States. She was here for another four years and did not attempt to have the IUD removed. With regard to the fine, she paid the fine without principal objection. Initially, she stated she resisted because they did not have the money, but her husband obtained a new and higher paying job and they paid the fine within a month's time. So she has not established that there was other resistance and or persecution on account of that other resistance. And in addition, she's been here in the United States for over four years, did not attempt to have the IUD removed until she went to the doctor. During her testimony, she's never expressed what harm she would suffer specifically if she went back to China. And I would note that in the January, in the United States Department of State country reports on human rights practices for 2017, the Chinese government has officially, the two child policy, they have, was officially implemented as of January 2016. So now, I would ask this court to take administrative judicial notice of the United States Department of State country reports for 2017, whereby the Chinese government has indeed established a policy for having two children. So with that in mind, there is no way that this petitioner could, did at that time, establish a well-founded fear. And she can't establish a well-founded fear at this point in time. Mr. Williams, is there a reason you didn't oppose Ms. Wang's arguments on relief under the cap relief?  Is there a reason you didn't oppose Ms. Wang's arguments on relief under Convention Against Torture? I did not see those, that request. Well, it wasn't a request. It was brought up in the briefing by Ms. Wang, but there was no response in your briefing on the cap. And so I didn't know how to treat that, if you... Well, we would oppose, we would oppose any request for such relief. And I would conclude... Well, do we, it sounds like you don't concede it, but was it waived by not raising it in your, in your opposition brief? It, it was, it was not waived. The arguments that were presented with, in addition to what the agency found, was that the evidence that this petitioner presented did not rise to a level where she established eligibility for, for any relief. I've never seen it where the government didn't respond to the cap relief once it's been raised. So I wasn't sure what was going on there. You, you know, might be in the, in your best interest on behalf of your client to raise it in the future, to respond to it. Thank you, Your Honor. I would just conclude by stating that the petitioner has not presented compelling evidence to overturn the agency's decision. That substantial evidence does support the agency's decision and ask that this Court deny the petition for review. Thank you. Thank you. Thank you for your oral argument presentations today. Or did you have some time left? I'm sorry. You had some time left. Please come forward. Mr. Johnson, I'm sorry. I'll be quick, Your Honors. What I did not address, and I know that the government has with regard to persecution in the future and in the past to some extent, clearly, while there is a two-child policy that is allegedly in effect in China, is she has two children. So she would be in a position to be required to have another IUD and would be punished should she conclude that she wished to have a third child. So she would have that fear. It's also possible that given that in order for her to register her second child, she had to pay a $5,000, 5,000 yuan fine. It's possible there are other fines that she could still be subject to with regard to the one-child policy. And so given that her experience with the one-child policy prior to that, including being dragged, the first IUD, including the fines that were imposed, as well as wearing an IUD that while she certainly could have had it removed, she could have been punished for that. Even to the point where she kept the IUD in the United States out of fear that if she returned, she would be subject to punishment by the authorities. So I think overall, she's not had good luck with the one-child policy in China, certainly to the extent that it constitutes persecution. But I think she legitimately has fear of a repeat should she return. Thank you, Your Honor. Thank you. Mr. Williams, Mr. Johnson, thank you for your oral arguments presented here today. The case of Wang versus Sessions is submitted.
judges: Tashima, Murguia, Chatigny